Appeal by plaintiffs, Michael Shane Collier and Russell Collier, from summary judgment for the defendant, Chris Necaise, *Page 276 
in plaintiffs' action to recover damages for Shane Collier's personal injuries. We affirm.
 The facts are not in dispute. Defendant Necaise is the owner of a convenience store near Bayou La Batre. On September 3, 1985, as Hurricane Elena threatened the Gulf Coast, Necaise loaded the stock of his store onto two trucks owned by a friend, plaintiff Russell Collier (Shane's father), and moved with his family to the Collier home to wait out the storm. The following day, the Collier and Necaise families returned to restock the store. Among those helping was plaintiff Shane Collier, who was one day short of his tenth birthday. Although the building was intact, debris from the storm was strewn across the property, including numerous boards from a wooden fence that the storm had destroyed. Nails protruded from many of the boards.
 After unloading the two trucks, Necaise and Russell Collier decided to go inspect some other property. Before leaving, they spoke to their sons, Chrissy Necaise and Shane Collier, each man warning his own son to watch out for the nails in the boards. The restocking was close to completion, and neither father had asked the boys to do anything further. After the fathers left, Shane stepped on a nail in one of the fence boards; the nail punctured his tennis shoe and entered his foot. Later, his foot required medical treatment when it became infected.
 On July 25, 1986, the plaintiffs filed this action. The Colliers contend that Necaise negligently or wantonly failed to warn Shane of a dangerous condition on Necaise's property and that he was injured as a result. In due course, Necaise filed a motion for summary judgment, supported by excerpts from the depositions of the parties. The plaintiffs filed no response to this motion, and the trial court granted summary judgment for Necaise. This appeal followed.
 The plaintiffs argue that the trial court committed reversible error in granting the defendant's motion for summary judgment. The following standard is well established:
 "In order for summary judgment to be proper, the trial court must conclude that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law." Berry v. South Carolina Ins. Co., 495 So.2d 511, 512 (Ala. 1985).
 Once a motion for summary judgment has been made and supported as required by Rule 56(e), A.R.Civ.P., the motion is due to be granted unless the moving party "makes an evidentiary or factual showing in opposition to show that there is a genuine issue of fact for trial." Butler v. Michigan Mutual Ins. Co., 402 So.2d at 949, 951 (1981). Summary judgment is erroneous if the nonmoving party provides a scintilla of evidence in its favor. Staples v. Jenkins Builders, Inc., 447 So.2d 779 (Ala.Civ.App. 1984).
 "The nonmoving party cannot, however, rely on the denials or allegations of the pleadings, where the moving party has offered affidavits or other supporting evidence. . . . When the moving party offers proof of no genuine issue of material fact, it then becomes incumbent upon the nonmoving party to submit counter-affidavits to show such an issue does exist."
 (Citations omitted.) Bishop v. Leavell Banking Co., 464 So.2d 106, 107 (Ala.Civ.App. 1985).
 The Colliers did not attempt to make any evidentiary or factual showing in opposition to Necaise's motion.
 "When no evidence is offered to contradict that presented by the movant, the court has no alternative but to consider the evidence uncontradicted; and summary judgment, if warranted by such evidence, may be entered against the nonmoving party. . . ."
 Bishop, 464 So.2d at 107. Thus, the trial court was correct in concluding that the evidence offered by Necaise was uncontroverted. The question remaining is whether such evidence warranted a judgment for Necaise as a matter of law.
In answering this question, we must first ascertain the extent of the duty of care that Necaise, as an occupier of land, owed *Page 277 
to Shane under these circumstances. This duty is dependent on Shane's "status" as either a licensee, an invitee, or a trespasser on Necaise's property. Frederick v. Reed, 410 So.2d 95 (Ala.Civ.App. 1982). Necaise's duty is further delineated by the fact that Shane was a nine-year-old child.
 The plaintiffs contend that Shane should be accorded the status of an "invitee," since his purpose in coming onto Necaise's property was to help in the restocking of the defendant's convenience store. Although we recognize the Collier family's actions in helping Necaise during the storm as neighborly gestures of goodwill, there is no question that Necaise received a benefit that was commercial as well as personal in nature. It is well settled that "[t]he relationship of invitor-invitee arises when an invited person enters upon the land of another for purposes which would be of a material or commercial benefit to the invitor." Frederick, 410 So.2d at 97.
 Nevertheless, Necaise contends that Shane merely had the status of a licensee, since, at the time of the accident, Necaise had not asked Shane for any further help in restocking the store. However, the facts show that Shane was still unloading items from one of the trucks when he stepped on the nail. Since we are obligated to draw from the facts those inferences most favorable to the nonmovant, we find evidence that Shane had retained his status as an invitee when the accident occurred.
 Having determined that there was evidence of Shane's status as an invitee, we must now establish the extent of the duty of care that the defendant, as an occupier of land, owed to a child invitee. While there are numerous Alabama cases setting out the duty that an occupier of land owes to an invitee, there has never been a clear distinction between the duty of care applicable to invitees who are adults and the duty applicable to those that are children. In order to clarify this issue, the plaintiffs urge the Court to extend the principles stated in Restatement (Second) of Torts, § 339 (1965) (pertaining to artificial conditions on land that cause injury to trespassing children) to cases involving injuries to child invitees. In Motes v. Matthews, 497 So.2d 1121 (Ala. 1986), we established that § 339, Restatement (Second) of Torts, properly stated the duty that an occupier of property owes to a trespassing child with regard to artificial conditions on the land:
 " 'A possessor [occupier] of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
 " '(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
 " '(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
 " '(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
 " '(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
 " '(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.' [Emphasis added in Motes.]"
 Furthermore, Restatement (Second) of Torts envisioned the extension of § 339 to those cases involving child invitees. Section 343B provides: "In any case where a possessor of land would be subject to liability to a child for physical harm caused by a condition on the land if the child were a trespasser, the possessor is subject to liability if the child is a licensee or an invitee." The plaintiffs recommend that we adopt § 343B (and, by reference, § 339) as the appropriate test for determining the liability for an occupier of land with regard to child licensees and invitees injured by a dangerous condition on the land.[1] *Page 278 
 However, this Court's adoption of § 343B would not augment the duties that an occupier of land owes to children who are licensees or invitees. An occupier of land owes to licensees and invitees a heightened duty of care relative to the duty that he would owe to a trespasser. It is clear, in any case where an occupier of land would be liable to a trespassing child for physical harm caused by a dangerous condition on the land, that, a fortiori, he would be subject to liability if that child was a licensee or an invitee. Indeed, Restatement (Second) of Torts, § 343B, recognizes that "[b]ecause of his status as a licensee or an invitee, the child may be entitled to greater protection than that afforded to a trespasser. This Section [343B] is intended to say only that he is entitled to at least as much." Therefore, we acknowledge that Restatement (Second) of Torts, § 343B, accurately reflects our existing law on premises liability, but that an occupier of land may owe a higher duty depending on the specific law regarding licensees and invitees.
 Having found evidence that Shane was an invitee, we now examine those standards applicable to all invitees, regardless of whether they are adults or children. In Quillen v. Quillen, 388 So.2d 985 (Ala. 1980), we restated the duty owed by a landowner to an invitee:
 " 'This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. [Citation omitted.]
 " 'This rule . . . includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation.' "
 388 So.2d at 989, quoting Lamson Sessions Bolt Co. v. McCarty, 234 Ala. 60, 63, 173 So. 388, 391 (1937).
 Therefore, an invitor is not liable for injuries to an invitee resulting from a dangerous condition that is known to the invitee, or resulting from one that the invitee should have recognized in the exercise of reasonable care. Edwards v. Hammond, 510 So.2d 234 (Ala. 1987).
 "The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Gray v. Mobile Greyhound Park, Ltd., 370 So.2d 1384 (Ala. 1979); Tice v. Tice, 361 So.2d 1051 (Ala. 1978). Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable."
Quillen, 388 So.2d at 989.
 There is no reason why these same standards cannot apply to cases in which the invitee is a child. Nevertheless, an invitee's peculiar status as a child may alter the degree of "reasonable care and diligence" required on the part of the occupier of land. Indeed, the court recognized this possibility in City of Birmingham v. Whitfield, 29 Ala. App. 454, 197 So. 666 (1940):
 "[T]he degree of caution which is necessary to reach the required standard of reasonable care to be exercised may vary according to the capacity of the person with respect to whom such duty exists and . . . those upon whom the duty rests of exercising reasonable care toward children must calculate upon the fact that *Page 279 
children are expected to act according to their known characteristics and childish impulses. . . ."
 29 Ala. App. at 458, 197 So. at 670. Surely, one may postulate many cases in which a child invitee might not be able to appreciate the perils presented by a dangerous condition that would appear "open and obvious" to an adult. The child's ignorance of the danger in such a case would trigger the duty to warn on the part of the occupier of the land, even though there might be no duty to warn an adult in the same position. Each of these cases must be examined individually, taking into account the child's age, experience, and maturity in determining whether the child invitee is "ignorant" of the danger so that the duty to warn remains extant. With these principles in mind, we find that our established standards of care with regard to invitees are well-suited to cases in which the invitee is a child.
 In reviewing the circumstances surrounding the case sub judice, we are mindful of the fact that we must view all of the reasonable inferences most favorably to the plaintiffs. First, even taking the most favorable view of the evidence, we must conclude that Necaise did not have the "superior knowledge" of the dangerous condition that would be required in order to hold him liable. In his deposition, Shane, the child, testified as follows:
 "Q. You knew . . . that there were boards with nails blown down from the fence and debris and stuff around; is that right?
"A. Yes, sir.
". . .
 "Q. If you had been looking where you were going you could have seen the board and you could have seen the nail in it; is that correct?
"A. Yes, sir.
". . .
 "Q. Were there other boards with nails in them around there?
"A. Yes, sir.
"Q. Had you seen those?
"A. Yes, sir.
 "Q. Had you avoided them and been careful not to step on them?
"A. Yes, sir.
 "Q. And you understood that there were nails in boards laying on the ground back there; is that correct?
"A. Yes, sir."
 The record also reveals that Shane had suffered a similar injury by stepping on a nail at an earlier time in his childhood. Thus, after carefully reviewing the record, we hold that Shane had a sufficient knowledge and appreciation of the dangerous condition of the fence boards to obviate Necaise's duty to warn him of that condition.[2] Even though there was no duty to warn in this case, Shane did receive the benefit of receiving a warning from his father, and hearing the warning that Necaise gave to his son, Chrissy. In his deposition, Shane was questioned about these warnings:
 "Q. What do you recall Mr. Necaise saying to you and Chrissy before he left?
 "A. He didn't say nothing to me. He said, told Chrissy to watch out for nails.
"Q. What exactly did he say?
"A. He said, Chrissy, watch out for nails.
 "Q. Were you standing there when he said that to Chrissy?
"A. Yes, sir.
"Q. And you heard him say it?
"A. Yes, sir.
". . .
"Q. What did your dad say to you?
 "A. He told me if I stuck a nail in my foot he was going to beat my butt."
Thus, although Shane was already fully aware of the danger presented by the boards, these warnings, each quite specific in nature, clearly called his attention to the dangerous condition. It is immaterial that Necaise did not directly warn Shane, since Shane admits to having heard both of the *Page 280 
warnings, either of which were sufficient to call his attention to the protruding nails.
 Because there is a complete lack of evidence tending to establish a breach of any duty owed to the plaintiffs by the defendant, the trial court's summary judgment was proper under Rule 56, A.R.Civ.P. Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.
[1] Section 343B applies to both natural and artificialconditions that cause physical harm to a trespassing child. While Restatement (Second) of Torts, § 339, is directed only to artificial conditions, the duty of care that an occupier of land owes to trespassing children with regard to natural
conditions on the land remains the conventional duty: i.e., not to willfully or wantonly injure them or put traps or pitfalls in their way, to warn them of danger actually known by the occupier to exist on the premises after he has knowledge of their presence, and to use due care after discovering their peril. Motes, supra.
[2] Incidentally, due to this finding, Necaise cannot be subject to liability for injuries to the child invitee under § 343B (and § 339), since Shane was aware of the dangerous condition and realized "the risk involved in intermeddling with it."Restatement (Second) of Torts, § 339(c).